UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

MALCOLM BUNNELL individually and on      )
behalf of their minor child A.B.,                        )
CAITLIN WHITE individually and on          )
behalf of their minor child A.B.,                        )
                                                                     )
                            Plaintiffs,                       )
                                                                     )
              v.                                                 )     No. 1:23-cv-02113-JPH-TAB
                                                                     )
CITY OF FISHERS, *et al.*                          )
                                                                     )
                            Defendants.                    )

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Malcolm Bunnell and Caitlin White, individually and on behalf of their minor child A.B., brought this action against the City of Fishers and four Fishers police officers, alleging that the officers' conduct violated their Fourth Amendment rights and state tort law.  Plaintiffs' claims are based on an incident where the officers stopped their vehicle, detained them, and searched the vehicle.  Shortly before this happened, one of the officers had been told that Mr. Bunnell had a gun and had just been involved in an altercation with another man in a nearby parking lot.  It turned out that Mr. Bunnell did not have a gun, and the person who told the officers otherwise was criminally charged for false reporting.  Defendants have filed a motion for summary judgment.  Dkt. [40].  For the reasons below, that motion is **GRANTED.**

**I.
Facts and Background**

1

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

On April 21, 2023, a woman called 911 to report an altercation near a Wal-Mart in Fishers, Indiana. Dkt. 44 Ex. 15 (911 recording). The woman reported that a black man in a beige-colored SUV and a white man were "yelling and screaming at each other." *Id.* at 0:29–0:37. Officer Robert Thompson, of the Fishers Police Department ("FPD"), responded. Dkt. 44 Ex. 17 (Thompson body cam). Officer Thompson had been told by dispatch that there was a "fight in progress at the Walmart, with individuals possibly on the ground," dkt. 41-4 at 11:13-16 (Thompson Dep.), but no mention was made of a gun, *id.* at 14:7-11.

Upon arrival, Officer Thompson approached the white man—later identified as Dustin Martin—and asked if he was arguing with someone. Dkt. 44 Ex. 17 at 15:19:49. Mr. Martin responded, "yeah, the guy in the Escalade with a gun." *Id.* at 15:19:53. Officer Thompson asked what was going on, and Mr. Martin said, "the guy in that Escalade, he's got a gun. I told him, I said, why don't you leave me the f**k alone. He just won't leave me the f**k alone." *Id.* at 15:20:00–15:20:05. The man in the Escalade—later identified as Malcolm Bunnell—had pulled away from the scene. Dkt. 44 Ex. 18 at 19:20:58

(Thompson dash cam).[1]  So, at that point, Officer Thompson "had the dispatch call of two men fighting, and possibly one on the ground, and then [he] had information about a weapon."  Dkt. 41-4 at 15:3-5 (Thompson Dep.).  Based on Mr. Martin's statement, Officer Thompson assumed that Mr. Bunnell had displayed a gun during the altercation.  *Id.* at 38:9-22–39:1.

Officer Thompson then located the beige-colored SUV at an intersection near the Wal-Mart and initiated a stop.  Dkts. 41-4 at 39:11–15.  He drew his firearm and instructed Mr. Bunnell, the driver, to show his hands.  Dkt. 44 Ex. 17 at 15:21:02–15:21:45.  Officer Shawn Wynn then arrived on the scene, and Officer Thompson commanded Mr. Bunnell to exit the vehicle and walk backwards.  Dkts. 44 Ex. 19 at 15:22:51 (Wynn body cam); 44 Ex. 17 15:23:06–15:23:38.  Officer Wynn applied restraints to Mr. Bunnell.  Dkt. 44 Ex. 19 at 15:25:15–15:25:52.  Officer Thompson then told Caitlin White—Mr. Bunnell's spouse, who was in the vehicle with their baby—to get out of the vehicle.  Dkt. 44 Ex. 17 at 15:26:25–15:26:47; dkt. 44 Ex. 19 at 15:26:13–15:26:16.

Sgt. Ben Colling and Officer Cody Weaver then arrived on the scene. Dkts. 44 Ex. 21 at 15:26:32 (Colling body cam); 44-22 at 15:26:38 (Weaver body cam).  Sgt. Colling drew his firearm and instructed Ms. White to walk backwards toward the patrol vehicles.  Dkt. 44 Ex. 21 at 15:26:52.  Officer Weaver placed her in handcuffs.  Dkt. 44 Ex. 22 at 15:27:16.

---

[1] As Defendants note, the time stamp on Officer Thompson's dash camera is about four hours ahead of the other time stamps, but no party disputes the accuracy or admissibility of the video.

Officer Thompson then asked to search the vehicle.  Dkt. 44 Ex. 17 at 15:32:50.[2]  Mr. Bunnell said there was not a gun in the vehicle, but he could search.  *Id.* at 15:32:54.  Near the end of the search, Officer Thompson lifted a blanket that was on the baby before shutting the door.  *Id.* at 15:34:26.  Sgt. Colling removed Ms. White's handcuffs during the search, and she returned to the vehicle.  Dkt. 44 Ex. 21 at 15:33:38–15:44:30.

After searching the vehicle, Officer Thompson removed Mr. Bunnell's restraints.  Dkt. 44 Ex. 17 at 15:35:09.  Officer Thompson then gave Mr. Bunnell a business card with a case number on it, *id.* at 15:44:10, and Mr. Bunnell and Ms. White drove away.  Dkt. 44 Ex. 18 at 19:45:51.  The stop lasted about 25 minutes.  *Id.* at 19:21:57–19:45:51.

Mr. Martin was later charged with misdemeanor false informing and misdemeanor resisting law enforcement.  Dkt. 41-14.  The charges were supported by an affidavit sworn by Officer Thompson, stating that Mr. Martin "reported a false commission of a crime stating [Mr. Bunnell] had a gun and failed to stay at the scene after being told to stay while I was conducting my investigation."  Dkt. 41-13 at 2.

---

[2] Plaintiffs state that Officer Thompson told Mr. Bunnell that Wal-Mart security had told him to "Get the black guy."  Dkt. 47 at 3, 12, 17, 26.  The designated video evidence, however, is clear that Mr. Bunnell interjected the words "Get the black guy," which Officer Thomson immediately disagreed with.  Dkt. 44 Ex. 17 at 15:30:52.  The Court does not credit Plaintiffs' alleged factual dispute because it is contradicted by reliable video evidence.  *See United States v. Norville*, 43 F.4th 680, 682 (7th Cir. 2022) ("[A] video record of the events at issue can evaporate any factual dispute that would otherwise exist." (quoting *Scott v. Harris*, 550 U.S. 372, 381 (2007)).

Plaintiffs filed this action against the City of Fishers, Officer Thompson, Officer Wynn, Sgt. Colling, and Officer Weaver.  Dkt. 1 at 1.[3]  They allege:

- Count I: Officer Thompson unlawfully seized Plaintiffs;

- Count II: Officers Thompson and Wynn falsely arrested Mr. Bunnell and violated the Second Amendment by arresting him based on their belief that he had a gun;

- Count III: Officer Weaver and Sgt. Colling falsely arrested Ms. White;

- Count IV: Officer Thompson and Sgt. Colling used excessive force against Plaintiffs;

- Count V: Defendants detained Mr. Bunnell and Ms. White for an unreasonable length of time;

- Count VI: The City of Fishers has a "policy, custom, pattern, and practice of biased based profiling"; and

- Count VII: Defendants were negligent by leaving A.B. alone in the vehicle for an extended period of time.  *Id.* at 4–11.

Defendants have moved for summary judgment.  Dkt. 40.

**II.**
**Applicable Law**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party must

---

[3] Plaintiffs also alleged a count against Wal-Mart, but Wal-Mart has been voluntarily dismissed.  Dkt. 38.

inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573–74 (7th Cir. 2017).

### III.
### Analysis

#### A. Abandoned claims

Defendants argue that they are entitled to summary judgment on Count VI (FPD biased profiling), Count VII (negligence), the Second Amendment claim embedded in Count II, and any state-law analogues of the false arrest, unlawful detention, and excessive force claims. Dkt. 43 at 22, 24–29. Plaintiffs' response does not address those arguments, *see* dkt. 47, so they have "abandoned the claim[s]." *See Maclin v. SBC Ameritech*, 520 F.3d 781, 788 (7th Cir. 2008). The Court therefore **GRANTS** Defendants' motion for summary judgment on these abandoned claims.

#### B. Fourth Amendment claims

6

Plaintiffs' remaining claims arise under the Fourth Amendment: unlawful seizure (Count I), false arrest (Counts II, III), excessive force (Count IV), and unreasonable length of detention (Count V). Under the Fourth Amendment, individuals have a "right . . . to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Defendants argue that they did not violate Plaintiffs' Fourth Amendment rights, dkt. 43 at 16–22, and that they are entitled to qualified immunity because there was no "clearly established law that would have put the officers on notice that their conduct was unlawful." Dkts. 43 at 17–20; 53 at 12–13. The qualified immunity defense is dispositive, so that is where the Court's analysis begins and ends.

### 1. Qualified immunity standard

"Government officials enjoy qualified immunity from suit under § 1983 unless their conduct violates clearly established law." *Zorn v. Linton*, 146 S. Ct. 926, 930 (2026). This means that "officers are entitled to qualified immunity . . . unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018). The district court has discretion to "consider first whether the right is clearly established if doing so will conserve judicial resources." *Findlay v. Lendermon*, 722 F.3d 895, 899 (7th Cir. 2013).

"A right is clearly established when it is sufficiently clear that every reasonable official would have understood that what he is doing violates that

right."  *Zorn*, 146 S. Ct. at 930.  In other words, existing precedent must place the constitutional question "beyond debate."  *Id.* (Finding a clearly established right generally requires "a case where an officer acting under similar circumstances was held to have violated the Constitution.").  The relevant precedent must define the right with a "high degree of specificity," so that "every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply."  *Id.*  "In short, officers receive qualified immunity unless they could have "read" the relevant precedent beforehand and "know[n]" that it proscribed their specific conduct.  *Id.*[4]

Qualified immunity is analyzed defendant-by-defendant and claim-by-claim.  *Mabes v. Thompson*, 136 F.4th 697, 705 (7th Cir. 2025).  The plaintiff bears the burden of showing "clearly established law . . . particularized to the facts of the case."  *Id.*  Meeting that burden "is a 'do or die' requirement for the plaintiff's suit.  If a plaintiff fails to identify analogous precedent clearly establishing the law, the district court must grant summary judgment for the defendant."  *Villalobos v. Picicco*, 168 F.4th 1057, 1063 (7th Cir. 2026); *accord Thomas v. Carmichael*, 164 F.4th 1058, 1067 (7th Cir. 2026).

### 2.  Unreasonable seizure (Count I)

Plaintiffs argue that Officer Thompson lacked reasonable suspicion that Mr. Bunnell had a gun, and that even if he had such reasonable suspicion, he

---

[4] Even in the absence of specific, controlling precedent, officials may not be entitled to qualified immunity in "rare cases" when the "alleged conduct is so egregious that it is an obvious violation of a constitutional right."  *Leiser v. Kloth*, 933 F.3d 696, 701 (7th Cir. 2019).  Plaintiffs do not argue that this exception applies here.

had no reason to suspect *unlawful* possession or that Mr. Bunnell committed any other crime. Dkts. 1 at 4; 47 at 11–15, 25–27. Officer Thompson argues that he is entitled to qualified immunity on Count I because the initial stop did not violate Plaintiffs' clearly established rights. Dkts. 43 at 16–24. Plaintiffs respond that Officer Thompson's "conduct violated Plaintiffs' clearly established constitutional rights to be free from unreasonable search and seizure." Dkt. 47 at 21–22.

The parties agree that the *Terry* standard applies to Officer Thompson's initial stop. Dkt. 43 at 17; dkt. 47 at 10–11. "Under *Terry v. Ohio,* law enforcement officers may conduct brief investigatory stops if they have reasonable suspicion that a person is engaged in criminal activity." *United States v. Smith*, 32 F.4th 638, 641 (7th Cir. 2022). "Reasonable suspicion must account for the totality of the circumstances and requires more than a hunch but less than probable cause and considerably less than preponderance of the evidence." *Id.* And in assessing reasonable suspicion, "[courts] must permit officers to make commonsense judgments and inferences about human behavior," *Kansas v. Glover*, 589 U.S. 376, 380–81 (2020).

To overcome qualified immunity on this claim, plaintiffs "must show not only that the stop was unlawful, but also that the unlawfulness of the stop was clearly established at the time that it occurred." *Torry v. City of Chicago*, 932 F.3d 579, 587 (7th Cir. 2019). The uncontested designated evidence is that Officer Thompson stopped Plaintiffs based on a police dispatch telling him that a 911 caller reported an altercation and Mr. Martin telling him that Mr.

Bunnell was "f*cking with [Mr. Martin]" and had a gun.  Dkts. 41-4 at 15:3-5 (Thompson Dep.); 44 Ex. 17 at 15:19:49–15:19:54 (Thompson body cam).[5]

Plaintiffs have not overcome the qualified immunity defense because they do not cite "squarely govern[ing]" precedent showing that every reasonable police officer would have known that stopping Mr. Bunnell under these circumstances violated the Fourth Amendment.  *See* dkt. 47 at 21–22, 25; *Zorn*, 146 S Ct. at 930; *Mullenix v. Luna*, 577 U.S. 7, 15 (2015).  Instead, they cite only *Jacobs v. City of Chicago*, for the general principle "that a citizen may not be detained by law enforcement officials without probable cause."  215 F.3d 758, 773 (7th Cir. 2000).[6]  *Jacobs* does not squarely govern this situation.  First, *Jacobs* involved a different and higher legal standard, probable cause instead of reasonable suspicion.  Second, *Jacobs* is not factually similar because there, the police detained the plaintiff for three hours during an apartment search.  *Id.* at 772–73.  That case therefore does not place the constitutional question here "beyond debate."  *Zorn*, 146 S. Ct. at 930.

Plaintiffs have therefore not carried their burden to show that Officer Thompson's initial stop violated a clearly established right.  *See Villalobos*, 168 F.4th at 1063.

---

[5] Plaintiffs argue that there is a genuine dispute of material fact about what offense Officer Thompson was investigating.  Dkt. 47 at 3.  But whether articulable facts existed to support reasonable suspicion is a question of law, regardless of an officer's subjective intent.  *See Ornelas v. United States*, 517 U.S. 690, 696 (1996).

[6] If Plaintiffs intended to cite *Cox v. City of Indianapolis* to overcome qualified immunity for the initial stop, dkt. 47 at 22, it does not help them because *Cox* held that reasonable suspicion *did* exist for the initial stop there.  No. 1:19-cv-01393-JMS-DLP, 2021 WL 734265 at *9 (S.D. Ind. Feb. 25, 2021).

### 3. False arrest and prolonged detention (Counts II, III, and V)

Plaintiffs allege that Defendants arrested them without probable cause by holding them at gunpoint, placing them in restraints, and searching their vehicle, which unlawfully extended their detention. Dkt. 1 at 15–21. Defendants argue that they are entitled to qualified immunity because "there is no factually-similar case that establishes that the stop, handcuffing, or brief pointing of the weapon were unlawful," and the stop continued no longer than necessary. Dkt. 43 at 23–24; dkt. 53 at 14, 16. Plaintiffs respond that the "30-minute detention of the entire family" was unsupported by probable cause and therefore violated Plaintiffs' clearly established rights. Dkt. 47 at 25–27.

The designated evidence shows that after Officer Thompson stopped the vehicle, he instructed Mr. Bunnell at gunpoint to exit the vehicle, and then Officer Wynn detained him, applying restraints on his wrists. Dkts. 41-17 at 15:21:02–15:21:45; 44 Ex. 19 at 15:25:15–15:25:52. Sgt. Colling then instructed Ms. White at gunpoint to exit the vehicle, and Officer Weaver detained her, applying handcuffs on her wrists. Dkts. 44 Ex. 21 at 15:26:52; 44 Ex. 22 at 15:27:16. Officer Thompson then searched Plaintiffs' vehicle with Mr. Bunnell's consent. Dkt. 44 Ex. 17 at 15:32:50–15:32:54. Sgt. Colling removed Ms. White's handcuffs during the search, and she was permitted to return to the vehicle. Dkt. 44 Ex. 21 at 15:33:38–15:44:30. After the vehicle search, Officer Thompson removed Mr. Bunnell's restraints. Dkt. 44 Ex. 17 at 15:35:09.

On these undisputed facts, the initial stop did not become a de facto arrest. *See Matz v. Klotka*, 769 F.3d 517, 524–25 (7th Cir. 2014) (A *Terry* stop may "become a de facto arrest if the detention continues longer than necessary to accomplish the purpose of the stop or becomes unreasonably intrusive."). The brief use of restraints is permissible in the context of a *Terry* stop that involves "the possibility of the presence of a weapon." *Howell v. Smith*, 853 F.3d 892, 898 (7th Cir. 2017); *accord Jewett v. Anders*, 521 F.3d 818, 823 (7th Cir. 2008). Similarly, drawing weapons is permissible in the context of a *Terry* stop when officers "may have legitimately believed [it] was necessary to protect themselves." *Matz*, 769 F.3d at 526; *see Rabin v. Flynn*, 725 F.3d 628, 634 (7th Cir. 2013). Indeed, the intrusiveness here is less than in *United States v. Bullock*, when officers placed the suspect "in handcuffs and in the squad car for their safety while they pursued their investigation" and then transported him to his "residence where other officers were performing a search that could implicate him in criminal activity"—all without constituting a de facto arrest. 632 F.3d 1004, 1016–17 (7th Cir. 2011); *see Matz*, 769 F.3d at 526 ("Although the hallmarks of a formal arrest such as applying handcuffs, drawing weapons, and placing suspects in police vehicles should not be the norm during an investigatory detention, all of those measures have been recognized as appropriate in certain circumstances.").

As for the duration of the detention, there is no "bright-line time limit" for a *Terry* stop before it becomes a de facto arrest. *United States v. Reedy*, 989 F.3d 548, 553 (7th Cir. 2021). Relevant considerations include law-

enforcement's purposes for the stop, the time reasonably needed to accomplish those purposes, and the officers' diligence in pursuing the investigation. *See Bullock*, 632 F.3d at 1015 (7th Cir. 2011). Here, when Defendants spent the duration of the stop asking Plaintiffs what happened, explaining why they were stopped, and briefly searching the vehicle for a gun, the *Terry* stop was not converted to a de facto arrest. *See id.* (30- to 40-minute stop was reasonable when there was no indication that the officers unnecessarily prolonged the search); *Rabin*, 725 F.3d at 633–35 (finding 90-minute *Terry* stop reasonable when officers spent time verifying a firearm license).

Against those governing legal standards, Plaintiffs don't cite a case squarely governing this situation. So, they have not shown that Defendants violated their clearly established rights during the stop, as they must to overcome qualified immunity. *See Mullenix*, 577 U.S. at 11. Plaintiffs again cite *Jacobs v. City of Chicago* for the general principle "that a citizen may not be detained by law enforcement officials without probable cause." 215 F.3d at 773; dkt. 47 at 25. But general legal standards do not show that "existing precedent squarely governs the specific facts at issue." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (per curiam). And *Jacobs* does not address the reasonable suspicion standard applied to *Terry* stops. *See* 215 F.3d at 773. So, *Jacobs* would not have put every reasonable police officer on notice that under these circumstances, ordering Plaintiffs out of the car with weapons drawn, placing them in restraints, and searching the vehicle violated the Fourth Amendment.

Plaintiffs also cite *Cox v. City of Indianapolis*, a district court decision where the court held that a jury could find a constitutional violation when officers "handcuffed a mother at gunpoint in front of her young daughters and kept her handcuffed and in the backseat of a police car separated from her daughters for forty-five minutes." Dkt. 47 at 22 (citing No. 1:19-CV-01393-JMS-DLP, 2021 WL 734265 at *9–10 (S.D. Ind. Feb. 25, 2021). But the facts in *Cox* are different from the facts here, where the officers' use of restraints was shorter, plaintiffs were never placed in a police car, and the entire encounter was shorter. Even if *Cox* were more factually similar, it still would not overcome qualified immunity because district court decisions "have no weight as precedents and therefore cannot clearly establish a constitutional right." *Lovett v. Herbert*, 907 F.3d 986, 994 (7th Cir. 2018).

Plaintiffs therefore have not carried their burden to show any violation of their clearly established rights on Counts II, III, and V. *See Villalobos*, 168 F.4th at 1063 ("If a plaintiff fails to identify analogous precedent clearly establishing the law, the district court must grant summary judgment for the defendant.").

### 4. Excessive force (Count IV)

Plaintiffs allege that Officer Thompson and Sgt. Colling used excessive force against them by holding them at gunpoint. Dkt. 1 at 6. Officer Thompson and Sgt. Colling argue that they are entitled to qualified immunity. Dkts. 43 at 23–24; 53 at 14–15. Plaintiffs respond that it was clearly

14

established that the threat of deadly force violated Plaintiffs' constitutional rights.  Dkt. 47 at 23–24.

For excessive force claims, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'"  *Taylor v. City of Milford*, 10 F.4th 800, 806 (7th Cir. 2021).  "Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue."  *Kisela*, 584 U.S. at 104.

Plaintiffs argue that Officer Thompson threatened deadly force when he "searched A.B. in her car seat and around her baby blankets at gunpoint." Dkt. 47 at 23.  But they designate no evidence in support, and the video of the vehicle search shows that Officer Thompson was not holding a gun during the search.  Dkt. 44 Ex. 17 at 15:33:17–15:34:30; *see Norville*, 43 F.4th at 682. Though Officer Thompson *was* holding his gun when he initially approached the vehicle and looked in the backseat after Mr. Bunnell and Ms. White were detained, dkt. 44 Ex. 17 at 15:27:49–15:27:54, he did not point the gun at the baby.  So, on these facts, Plaintiffs have cited no precedent clearly establishing that any Defendant violated A.B.'s constitutional right to be free from law enforcement's threat of excessive force.  *See Kisela*, 584 U.S. at 104.

As for Mr. Bunnell and Ms. White, Officer Thompson instructed Mr. Bunnell at gunpoint to exit the vehicle, dkt. 41 Ex. 17 at 15:21:02–15:21:45, and Sgt. Colling then instructed Ms. White at gunpoint to exit the vehicle, dkt.

15

44 Ex. 21 at 15:26:52.  As explained above, however, drawing weapons is permissible in the context of a *Terry* stop when officers "may have legitimately believed [it] was necessary to protect themselves."  *Matz*, 769 F.3d at 526; *see Rabin*, 725 F.3d at 634.

Plaintiffs have not cited any precedent where a constitutional violation was found based on similar facts.  They again cite *Jacobs v. City of Chicago* to argue that Sgt. Colling is not entitled to qualified immunity for drawing his weapon on Ms. White because that case "clearly established that pointing a gun at an individual who presents no danger is unreasonable and violates the Fourth Amendment."  Dkt. 47 at 23 (citing 215 F.3d at 773–74).  In *Jacobs*, however, the Seventh Circuit found that pointing a gun the plaintiff's head after realizing he was not the suspect was objectively unreasonable.  *Id.* at 773–74.  That case does not squarely govern this one because when Sgt. Colling drew his weapon, the officers still suspected the presence of a firearm that had not been recovered.  Dkts. 44 Ex. 15; 44 Ex. 17 at 15:20:01–15:20:04; *see Matz*, 769 F.3d at 526.

Plaintiffs next cite *Graham v. Connor*—which established the factors typically considered in evaluating the reasonableness of force—to argue that Officer Thompson used excessive force against Mr. Bunnell by drawing his weapon.  Dkt. 47 at 24 (citing 490 U.S. 386, 396–97 (1989)).  But simply applying the *Graham* factors to the factual record is not enough to overcome a qualified immunity defense.  *Kisela*, 584 U.S. at 104 ("[T]he general rules set forth in . . . *Graham* do not by themselves create clearly established law outside

an 'obvious case.'").  Instead, to overcome qualified immunity, Plaintiffs must point to analogous precedent clearly establishing the violation.  *See Zorn*, 146 S. Ct. at 930; *Leiser*, 933 F.3d at 701.

Because Plaintiffs have not done so, they have not carried their burden to show any violation of their clearly established rights on Count IV.  *See Villalobos*, 168 F.4th at 1063.

## IV.
## Conclusion

Defendants' motion for summary judgment is **GRANTED**.  Dkt. [40]. Final judgment shall issue by separate entry.

**SO ORDERED.**

Date: 5/14/2026

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel